IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


JOHN D. CONNOR, JR.,

      **Plaintiff,**

**vs.**                                  **Case No. 1:14cv116-MP/CAS**

CAROLYN W. COLVIN,
**Acting Commissioner of Social Security,**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

      This is a Social Security case referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).   It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's Title II application for period of disability and Disability Insurance Benefits (DIB) and Title XVI application for Supplemental Security Income (SSI).   After careful consideration of the entire record, it is respectfully recommended that the decision of the Commissioner be affirmed.

**I.   Procedural History**

      On March 16, 2011, Plaintiff, John D. Connor, Jr., applied for DIB and SSI benefits with an alleged onset date of October 10, 2006, based on lower back problems, heart

disease, and high cholesterol.[1]   R. 14, 202-11, 242, 247.   (Citations to the record shall be by the symbol "R". followed by a page number that appears in the lower right corner.) Plaintiff's last date insured for DIB was June 30, 2013.   R. 14, 243, 272.   Plaintiff's applications were denied initially on May 11, 2011, and upon reconsideration on August 11, 2011.   R. 14, 77-107.   On October 13, 2011, Plaintiff requested a hearing.   R. 14, 108.   On November 9, 2012, Administrative Law Judge (ALJ) M. Hart conducted an evidentiary hearing in Jacksonville, Florida.   R. 14, 28-61.   Plaintiff testified.   R. 31-58. The case was continued at the request of Plaintiff's counsel.

R. 59-61.   The hearing (by video) re-convened on March 1, 2013, and Plaintiff and his counsel appeared in Gainesville, Florida, and the ALJ presided over the hearing from Jacksonville, Florida.   R. 62-76.   Plaintiff was represented by Pamela C. Dunmore, an attorney.   R. 14, 28, 62, 116-17.   Melissa T. Brooks, an impartial vocational expert, testified.   R. 14, 191-93 (Resume).

On April 16, 2013, the ALJ entered a decision concluding that Plaintiff is not disabled.   R. 14-23.   On April 23, 2013, Plaintiff filed a request for review of the ALJ's decision.   R. 9-10.   On September 14, 2013, the Appeals Council notified Plaintiff's counsel that it had granted Plaintiff's request for more time before acting on his case.   R. 5-6.   On May 13, 2014, the Appeals Council denied Plaintiff's request for review.   R. 1-4. The ALJ's decision stands as the final decision of the Commissioner.   *See* 20 C.F.R. § 404.981.

---

[1]   At hearing, Plaintiff amended his alleged onset date to July 29, 2008.   R. 14, 32-33, 75.   Counsel represented that this date was "in line with both the medical records as well as the earnings record" and added that "[t]here's a significant amount of earnings, Your Honor, posted after the original onset date."   R. 32.

On July 7, 2014, Plaintiff filed a Complaint requesting judicial review of the

Commissioner's final decision.   Doc. 1.   Both parties filed memoranda of law, docs. 13

and 14, which have been considered.

## II.  Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1.  "The claimant meets the insured status requirements of the Social Security Act through June 30, 2013."  R. 16.

2.  "The claimant engaged in substantial gainful activity [SGA] through 2008."  *Id.* The ALJ noted that Plaintiff had yearly earnings for 2008 at $13,777 and determined that Plaintiff's "work activity through October 21, 2008 is considered" SGA.  *Id.*; *see* R. 232, 236, 248, 255.   The ALJ also determined, however, "beginning October 22, 2008, there has been a continuous 12-month period(s) during which the claimant did not engage in [SGA].   The remaining findings address the period(s) the claimant did not engage in" SGA.   R. 16.

3.  "The claimant has the following severe impairments: degenerative disc disease status post L5-S1 microdiskectomy, and mild right carpal tunnel syndrome."  R. 17.   The ALJ noted that "obesity was considered in the residual functional capacity [RFC] assessment."  *Id.*   The ALJ also considered Plaintiff's claim "that he is disabled due to chest discomfort" and implicitly found this alleged impairment to be non-severe.   *Id.*

4.  "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  R. 17.   The ALJ noted: "Neither the claimant nor his representative attorney alleged that he meets or equals any listed impairment."  *Id.*

5.  "[T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he is able to occasionally climb, balance, stoop, kneel, crouch and crawl.   He is able to frequently handle objects, defined as gross manipulation, and frequently finger objects, defined as fine manipulation of items, with his hands, bilaterally."[2]   R. 17.

---

[2]   The relevant DIB and SSI regulations are virtually identical.   As a result, citations will be made to the DIB regulations found at 20 C.F.R. §§ 404.1500-404.1599, unless a SSI regulation provides otherwise.   The parallel regulations are found at 20 C.F.R. §§ 416.900-416.999, corresponding to the last two digits of the DIB citations, e.g.,

6.  "The claimant is capable of performing past relevant work as a filters assembler as that work is generally performed but not as he actually performed it.   This work does not require the performance of work-related activities precluded by the claimant's [RFC]."   R. 21.   The ALJ noted that the vocational expert testified that Plaintiff's past relevant work as characterized in the <u>Dictionary of Occupational Titles</u> (DOT) was as a Janitor, medium exertional level, semi-skilled work with a Specific Vocational Preparation (SVP) of 3 and as a Filters Assembler, light exertional level, unskilled work with an SVP of 2.   R. 21.   The ALJ further noted that a hypothetical person with the claimant's age, education, work experience, and RFC would be able to perform his past relevant work as a Filters Assembler as that work is generally performed and the ALJ agreed.   *Id.*

8.  Notwithstanding the step 4 findings discussed in the previous paragraph, the ALJ proceeded to step 5 and determined, by and through the testimony of the vocational expert, that Plaintiff could perform other representative jobs in the national economy including that of a Cashier, Ticket Taker, and Cafeteria Attendant, each at a light exertional level, unskilled, and with an SVP of 2.[3] R. 22-23.

9.  "The claimant has not been under a disability, as defined in the Social Security Act, from July 29, 2008, through the date of this decision "   R. 23.

## III.   Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and premised upon correct legal principles.

42 U.S.C. § 405(g); <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986).   "Substantial

evidence is more than a scintilla, but less than a preponderance.   It is such relevant

---

20 C.F.R. § 404.1563(c) corresponds to 20 C.F.R. § 416.963(c).

[3]  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."   20 C.F.R. § 404.1568(a).   An SVP of 2 means "[a]nything beyond short demonstration up to and including 1 month." <u>Dictionary of Occupational Titles</u> (DOT) (4th Ed., Rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.   In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

evidence as a reasonable person would accept as adequate to support a conclusion."

Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord*

Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).   "The Commissioner's factual

findings are conclusive if supported by substantial evidence."   Wilson v. Barnhart, 284

F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[4]

"In making an initial determination of disability, the examiner must consider four

factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining

physicians; (3) subjective evidence of pain and disability as testified to by the claimant

and corroborated by [other observers, including family members], and (4) the claimant's

age, education, and work history.'"   Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the

claimant is not only unable to do past relevant work, "but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy."   42 U.S.C. § 423(d)(2)(A).   A disability is an

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

---

[4]   "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."   Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).   "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.   A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."   Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).   "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"   Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002).   In addition, an individual is entitled to DIB if he is under a disability prior to the expiration of his insured status.   *See* 42 U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.   20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity [SGA]?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[5]

---

[5]   A residual functional capacity is the most a claimant can still do despite limitations.   20 C.F.R. § 404.1545(a)(1).   It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.   *Id.*   The responsibility for determining claimant's RFC lies with the ALJ.   20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities.   The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations by lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

     5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the

application for benefits.   A positive finding at step three results in approval of the

application for benefits.   At step four, the claimant bears the burden of establishing a

severe impairment that precludes the performance of past relevant work.   Consideration

is given to the assessment of the claimant's RFC and the claimant's past relevant work.

If the claimant can still do past relevant work, there will be a finding that the claimant is not

disabled.   If the claimant carries this burden, however, the burden shifts to the

Commissioner at step five to establish that despite the claimant's impairments, the

claimant is able to perform other work in the national economy in light of the claimant's

RFC, age, education, and work experience.   Phillips, 357 F.3d at 1237; Jones v. Apfel,

190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen,

786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R.

§ 404.1520(a)(4)(v).   If the Commissioner carries this burden, the claimant must prove

that he or she cannot perform the work suggested by the Commissioner.   Hale v. Bowen,

831 F.2d 1007, 1011 (11th Cir. 1987).

     Pain is subjectively experienced by the claimant, but that does not mean that only

a mental health professional may express an opinion as to the effects of pain.

To establish a disability based on testimony of pain and other symptoms, the claimant

must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical

condition; and (2) either (a) objective medical evidence confirming the severity of the

alleged pain; or (b) that the objectively determined medical condition can reasonably be

expected to give rise to the claimed pain.   Wilson, 284 F.3d at 1225.   This is guidance for the way the ALJ is to evaluate the claimant's subjective pain testimony because it is the medical model, a template for a treating physician's evaluation of the patient's experience of pain.   A clearly articulated credibility finding supported by substantial evidence will not be disturbed.   Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995).

To analyze a claimant's subjective complaints, the ALJ considers the entire record, including the medical records; third-party and the claimant's statements; the claimant's daily activities; the duration, frequency, intensity of pain or other subjective complaint; the dosage, effectiveness, and side effects of medication; precipitating or aggravating factors; and functional restrictions.   *See* 20 C.F.R §§ 404.1529 (explaining how symptoms and pain are evaluated); 404.1545(e) (regarding RFC, total limiting effects). The Eleventh Circuit has stated that "credibility determinations are the province of the ALJ."   Moore, 405 F.3d at 1212 ("The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole.").

## IV.   Medical and other Evidence

In determining Plaintiff's RFC, the ALJ began her discussion with Plaintiff's testimony.

> The claimant testified that he completed high school and he has a 2-year degree in architectural drafting and design.   He stated that he last worked in 2008 and received unemployment compensation benefits after 2008.   He looked for another job in free-lance drafting and he tried to attend classes at ITT technical school. He lives with his mother and sister, who are disabled.   He stated his mother has dementia and his sister had back surgery and he helps provide care. Concerning his daily activities, the claimant testified that he is able to perform personal hygiene, prepare meals, occasionally wash dishes and vacuum, and pick

up his clothes with a grabber device.   He shops for groceries and he has done laundry, although his sister does the laundry.   He helps care for his mother.   He agreed that he has exercised, walked, rode a bike, and taught martial arts in June 2010, as noted in treatment records (Exhibit 4F/pp. 76, 79).   He stated that he is able to sit for 25 to 30 minutes, stand for 15 minutes, and walk one-fourth to one-half block.   He has not been prescribed the use of a cane or other assistive device for walking.

R. 18.

The ALJ considered the treatment notes of Gary Newcomer, M.D., (at First Care of Gainesville) from September 12 and October 10, 2008, which reflected, in part, Plaintiff's complaints of worsening low back pain after doing laundry at home in June 2008, as well as objective physical findings showing tenderness at L4, L5, and S1 and limited range of motion (ROM) of the lumbar spine.   R. 16, 478-85, 637-44.[6]

Plaintiff's first visit related to this complaint was with Scott Wilson, M.D., (at First Care of Gainesville) on September 5, 2008.[7]   R. 479-80.   Dr. Wilson noted, in part, that

---

[6]   Plaintiff does not disagree with the ALJ's factual findings derived from the medical and other evidence submitted to the ALJ during the evidentiary hearing. Doc. 13.   Plaintiff incorporates part of ALJ's entire decision in his memorandum of law and thereafter refers to several selective portions of the medical records.   *See* Doc. 13 at 5-8.   For example, Plaintiff referred to Dr. Wilson's September 5, 2008, notes and Dr. Newcomer's September 12, 2008, notes.   Doc. 13 at 6-7.

[7]   In October 2005, Plaintiff was at work when he attempted to cross the street and stepped off a curb that gave him a significant jolt to his back.   Since that time he had back pain, greater than leg pain, but he also had leg pain.   He had been at light duty work.   R. 296, 597.   In late 2005, Plaintiff was treated at First Care Occupational Medicine by Drs. Newcomer and Wilson for strain of the low back and hip/thigh.   *See, e.g.*, R. 579-89, 645-54.   His work restrictions included that he should avoid lifting greater than ten pounds, avoid frequent bending and twisting of the back and avoid strenuous pushing and pulling.   *Id.*   He was also told to change positions between sitting and standing as needed.   *Id.*   On October 10, 2006, Plaintiff had a right L5-S1 microdiskectomy with microscopic evaluation, epidural installation of steroids, and foraminotomy.   The post-operative diagnosis was right L5-S1 herniated nucleus pulposus with S1 radiculopathy on the right side.   R. 329, 608-15.   On May 15, 2007, Oscar B. Depaz, M.D., recommended Plaintiff continue medium level activity and to avoid repetitive

Plaintiff has worked for Spherion Staffing doing

> Lenox purifying filter work.   He says he dunks corrugated aluminum into a solution and then rinses them and rinses baskets as well.   All of this he is doing leaning over.   He says the pain actually started in February.   He discussed it with his boss and said he was unable to do this all day.   He says his boss did accommodate by decreasing that activity to ½ day.   The other activity the other ½ of the day he is spending doing standing activities, cleaning and mopping, which includes bending and twisting which also is causing pain.   He states that most of the things he lifts are not heavy, weighing less than 5 lb, but it is the constant bending that has been bothering him.   He says the pain worsened in June and was extremely bad on 08/28/08.   He says he has been doing laundry at home and when he went to lift the laundry basket, he noticed increased pain in his back, sending him to his knees.   He says he has gotten radiating pain down the left anterior that stops mid-thigh, although that has been improving.   He continues to have lumbar pain which is a continuous throbbing pain with occasional sharp stabbing pains in the mid-lumbar area.   He denies bladder incontinence.   States he had one episode of bowel incontinence.   He is unsure if it was related.   He denies any numbness, tingling or weakness or saddle numbness.

R. 478.   Dr. Wilson described Plaintiff as alert and oriented and in no acute distress.   R.

479.   Plaintiff stood "slowly from exam room chair.   He ambulates with an antalgic gait."

*Id.*   An x-ray of the lumbar spine showed no fracture or subluxation; disc spaces were

normal; and mild end plate spurring of L3, L4, L5.   Dr. Wilson assessed Plaintiff with a

lumbar strain with persistent pain.   *Id.*   Medication was prescribed; ice and heat

application encouraged.   Plaintiff requested physical therapy.   Work restrictions

included no lifting greater than five pounds; avoid repetitive bending and twisting and

strenuous pushing and pulling; change positions from sitting to standing as needed.   *Id.*

On September 12, 2008, Plaintiff followed-up with Dr. Newcomer.   R. 480-81.

Plaintiff reported "*working light duty with no problems, but he has been rather sore toward*

---

bending, twisting, stooping, or squatting with the ability to change positions as needed and to avoid repetitive ladder or staircase climbing.   R. 314; *see* 295-314 (examination and treatment at Southern Integrated Medical and Southeastern Rehabilitation Medicine-June 12, 2006, to May 15, 2007).

*the end of the day*.   He has been taking 2 Mobic per day, averaging about 3 Tramadol per day."   R. 480 (emphasis added); *see supra* at n. 7.   Plaintiff reported taking up to two Zantac having had some stomach upset.   He had been taking between one and two Flexeril at nighttime which he stated helped him sleep and stopped the spasm at nighttime.   He occasionally reported having pain running down the anterior left thigh, about halfway to the knee but not on the right.   He denied any numbness or tingling in the lower extremities bilaterally; denied any fecal or urinary incontinence; and had been applying ice to his back.   *Id*.   Dr. Newcomer reported that Plaintiff was in no acute distress, alert and oriented x3.   On exam of the back, there was no tenderness over the thoracic or lumbar spinous processes; some tenderness in the left lumbar musculature, none on the right; spasm on the left, none of the right; he could forward flex to 70; extend his back 15; latterly bend and rotate 20; but had pain in the left lumbar musculature in all planes.   Plaintiff had no pain in the SI joints bilaterally and no pain over the coccyx or sacrum.   DTR's were "2+ bilaterally in the lower extremities.   Walks with a normal gait. Extensor hallucis longus 5/5 bilaterally.   Straight leg raising is negative bilaterally.   No paresthesias in the lower extremities."   *Id*.   The assessment was lumbar strain with minimal improvement.   *Id*.   Plaintiff was continued on Flexeril, Tramadol, and Meloxicam, Zantac discontinued, and Plaintiff started on Omeprazole.   R. 481.   Work restrictions included lifting no greater than ten pounds; avoid repetitive bending and twisting and strenuous pushing and pulling; and change positions from sitting to stand as needed.   *Id*.

On September 26, 2008, Plaintiff followed-up with Dr. Wilson and reported continuing to have a lot of pain in his low back.   R. 482.   He reported following the work restrictions on the lifting but "had to stand for prolonged periods 10 hour shifts, 2½ to 3 hours at a time, causing increased pain.   States he is feeling worse at the end of the day."   *Id.*   Plaintiff was continued on several medications, including Tramadol that helped some with pain and two Flexeril pills at bedtime that help when he takes two.   *Id.* Plaintiff was alert and oriented but sat "rigidly in exam chair with pillow behind his back" and he stood "slowly from exam chair."   *Id.*   The assessment included lumbar strain with worsened pain and left radiculopathy.   *Id.*   Plaintiff was to continue physical therapy and continued on several medications.   R. 483.   Work restrictions included limiting standing to one hour with sitting activity for ten to 15 minutes; limit lifting to no more than five pounds; and avoid repetitive bending, twisting, pushing and pulling.   *Id.*

On October 10, 2008, Plaintiff followed up with Dr. Newcomer for his back pain that he reports "is persistently painful with radiation down the left leg."   R. 484.   Plaintiff reported "doing light duty in the office at work, which seems to aggravate it when he sits too long.   Denies any other physical activity at home."   *Id.*   Plaintiff reported going to physical therapy three times and noted increased pain after therapy treatments.   He took his medications as directed and feels that it does help them to sleep at night.   A review of symptoms indicated that he was positive for back and leg pain but otherwise negative. *Id.*   Plaintiff's back had subjective tenderness to even light palpation over the entire lower lumbar area and he was somewhat hyper reactive to touch.   Plaintiff would forward bend only 20° and then stopped; lateral bend 10°; extend 10°.   Dr. Newcomer noted that

Plaintiff sat in a chair with full 90° of flexion of his back with no difficulty.   He had some

apparent rigidity when trying to check back range of motion.    There was no palpable

lumbar paraspinous spasm and straight leg raising was negative.    DTRs were 2+ at

knees and heel and toe gait were intact.    *Id*.   A recent MRI scan of Plaintiff's lumbar

spine was compared to a prior MRI of November 5, 2005, [R. 577-78] showing no

significant changes.   Dr. Newcomer reported there was degenerative disc disease at

L3/4, L4/5, L5/S1, but no herniation of nerve compression.   R. 485; *see* R. 577 (Nov. 15,

2005, MRI of Lumbar Spine).    Arthritic changes were noted in the lumbar spine with the

L4/5 central disc protrusion unchanged from 2005.    Dr. Newcomer's assessment was

lumbar pain with previous disc surgery and underlying degenerative disease.    Plaintiff

was encouraged to be more physically active and he was reassured that no surgical

intervention was needed at this time and that he should advance his activities steadily.

Plaintiff was advised that he may work with a ten-pound lifting limit with no repetitive

bending or twisting and frequent position changes.    The plan was to continue physical

therapy and several medications were renewed.    Dr. Newcomer further noted: "It

appears that the major contributing cause of his current condition is the preexisting

underlying degenerative disease and prior surgery.    Discussed at length with him that he

may expect some ongoing back complaints due to that underlying disease rather than

related to this 08/28/08 incident."    R. 485.

   The ALJ noted Dr. Newcomer's restrictions as stated above, but attributed to

Dr. Newcomer a note that Plaintiff "was performing full time light duty work activity *with no*

*difficulty* and such work was above the level of [SGA], as previously discussed, through

October 21, 2008.   Accordingly, the opinion expressed by Dr. Newcomer "is given little

weight."[8]   R. 18 (emphasis added).   As noted by the ALJ, a work activity report indicates

that Plaintiff worked after his amended alleged onset date on July 29, 2008, which

indicated he had engaged in SGA after this date until October 21, 2008.   R. 18, 232, 236,

248, 255, 291, 295.   (Plaintiff worked ten hours a day, five days per week, as an

assembly worker (of purifying air filters) at Industrial Air Filter Company,

R. 248, 255 (or perhaps Bear Archery Inc. R. 232, or SFN Professional Services,

R. 235, or Spherion Temp. Agency at Lenox Filters, R. 291) from January 2008 to

October 21, 2008.   R. 248.   He made $13,777 in 2008.   R. 18, 232, 236.)

The ALJ summarized Plaintiff's examination and treatment at the Veteran's

Administration Medical Center (VA) from August 2009 to October 2012.   R. 19.

> The record indicates treatment with the Veteran's Administration Medical Center
> from August 2009 to April 2011 for the claimant's complaints of chronic low back
> pain (Exhibit 4F).   His history includes surgical intervention in October 2006,
> consisting of a microdiscectomy of the lumbar spine LS-S1 for a herniated nucleus
> pulposis (Exhibit 2F).   The progress notes dated August 2009 indicate lumbago;
> however, the claimant had normal neurological and extremities findings.
> Additionally, the follow up notes dated November and December 2009 show
> normal findings and he was advised to continue home exercises.   The claimant
> reported in June 2010 that his exercise regimen consisted of riding a bike, walking,
> and teaching martial arts (Exhibit 4F).
>
> The Veteran's Administration Medical Center records further show the claimant
> was hospitalized for 1 day for a flare up of chronic low back pain with adverse side
> effects of nausea due to narcotic pain medication, which resolved with the initiation
> of Zofran medication (Exhibit 4F).   The claimant responded well to pain
> management consisting of Percocet and Toradol while in the hospital and he

---

[8]   On September 12, 2008, Dr. Newcomer noted Plaintiff reporting symptoms
stating "he has been working light duty with no problems, but he has been sore toward
the end of the day."   R. 480.   On October 10, 2008, Dr. Newcomer noted Plaintiff reporting
symptoms (S) of "doing light duty in the office at work, which seems to aggravate it when
he sits too long."   R. 484.

reported his pain was under better control.   He was able to move all extremities equally and strongly.   In addition, lumbar radiographic findings showed unchanged mild degenerative spondylosis.   The claimant reported that he usually took Ibuprofen for low back pain when seen for follow up evaluation in March 2011 and he reported that better pain control with a combination of Ibuprofen and Cyclobenzaprine after hospitalization.   However, he reported that he did not like to take narcotic medication regularly.   While he continued to have complaints of low back pain radiating to both lower extremities, there was no evidence of weakness or loss of sensation.   The MRI of the lumbar spine showed moderate degenerative disc changes at L4-L5 and L5-S1 and a small posterior central disc protrusion at L4-L5; however, there was no other significant disc herniation or nerve root impingement [R. 468].   The treatment records dated April 2011 indicate the claimant sought medication to calm him following the unfortunate death of his son; however, there is no evidence of ongoing symptoms or treatment after April 2011.   In a questionnaire completed in May 2011, it is noted that the claimant had chronic pain, contractures, and a gait disturbance with 4 out of 5 lower extremity strength and no need for an assistive device.   However, these findings are not supported by any objective physical findings by examination or testing.

The progress notes from the Veteran's Administration Medical Center dated September 2012 indicate the claimant had complaints of right wrist pain and an EMG study showed mild right carpal tunnel syndrome (Exhibit 8F).   The physical findings showed overall full strength and his muscles were well developed.   The progress notes further indicate obesity, although he had a 5-pound weight loss. He was prescribed a wrist brace in September 2012 for his right carpal tunnel; however, he reported no relief in October 2012.   In addition, he reported that he performed 30 to 60 minutes of martial arts daily, despite low back pain [R. 534, 540].   He further reported taking Ibuprofen more than once daily, although he would not take NSAIDS for several days at a time.   He reported that Cyclobenzaprine helped, but caused drowsiness.   He reported performing lower abdominal exercises, losing weight by following a low fat diet, and spending his time relearning computer graphics software and teaching martial arts.   His treatment regimen remained unchanged with prescribed medications and continued recommendations to follow a low fat diet, perform cardiovascular exercise, and walk.   It was further noted that weight loss would likely improve his low back pain significantly.   (Exhibit 8F)

R. 19.[9]

---

[9]   In his memorandum, Plaintiff referred to his patient notes at the VA from February 23, 2011, R. 397-98; March 7, 2011, R. 345-46, 375; and April 8, 2011, [sic] R. 345-46.   Doc. 13 at 7-8.   On May 3, 2011, a physician with the VA filled out a two-page questionnaire and provided an orthopedic diagnosis of chronic low back pain, moderate degenerative disk disease L4-5 and L5-S1, and disk protraction L4-L5.

The ALJ provide a brief summary of the "objective medical evidence and the treatment history" regarding Plaintiff's "musculoskeletal impairment and obesity" followed by a brief analysis of Plaintiff's conservative treatment history and consideration of Plaintiff's carpal tunnel syndrome.   R. 20.

> In terms of the claimant's musculoskeletal impairment and obesity, the objective medical evidence and the treatment history do not fully support the claimant's allegations.   The objective findings since October 22, 2008 show moderate degenerative disc changes at L4-L5 and L5-S1 and a small disc protrusion at L4-L5. However, there is no evidence of other significant disc herniation, nerve root impingement or spinal stenosis.   Additionally, the clinical findings are fairly benign with no evidence of weakness or sensory deficits and the record fails to show any objective clinical findings of tenderness or limited range of motion of the lumbar spine or abnormalities of the lower extremities since October 22, 2008. Furthermore, there is no evidence of an abnormal gait or station and no evidence of the need for an assistive device for ambulation.

> Likewise, the claimant's treatment history has been conservative, consisting primarily of Ibuprofen and Cyclobenzaprine and he has not required narcotic pain medication.   In addition, his treatment consists of exercise, diet, and walking to improve his symptoms of low back pain and he has shown a reduction in weight. Furthermore, he has not required additional surgical intervention, physical therapy, or injections.   Overall, the lack of objective medical findings and the good response to conservative treatment indicates that his symptoms are not as limiting as alleged.

> In terms of the claimant's right carpal tunnel syndrome, the objective medical findings dated September 2012 show no more than a mild degree of right carpal tunnel syndrome and he maintains full muscle tone and strength in the extremities. Likewise, his treatment for this condition is conservative with the use of a wrist brace and while he reported no relief, the treatment shows minimal use of the brace over a period of only a few weeks.   While the claimant testified that he was scheduled for right carpal tunnel release surgery in January 2013, the record fails

---

R. 345.   Gait disturbance, chronic pain, and contractures were noted as symptoms related to the orthopedic impairment.   R. 346.   Plaintiff's lower extremity strength was rated at 4/5; no hand-held assistive device was medically necessary.   *Id.*   Plaintiff was capable of performing fine/gross manipulations.   *Id.*   Prior to this assessment, Plaintiff was last seen at the VA on March 7, 2011.   R. 345.   The ALJ referred to this questionnaire.   R. 19.

to show that such surgery was performed.   Even if such a surgery were performed, it would be expected that the claimant's right carpal tunnel symptoms would be improved.   Nevertheless, the undersigned has resolved this issue in the claimant's favor by limiting him to no more than a frequent ability to finger and handle objects with his right upper extremity.

R. 20.

The ALJ assessed Plaintiff's credibility and, in particular, Plaintiff activities of daily living and work history.

In assessing the claimant's overall credibility, the undersigned has considered other factors, such as the claimant's activities of daily living and work history. The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant is able to perform a wide range of activities of daily living.   He is able to care for his personal needs independently, perform household chores including washing dishes and vacuuming, and prepare meals.   In addition, he helps care for his disabled mother and testified that he lives with a sister who has had back surgery.   Furthermore, he shops for groceries and is able to do laundry.   While he reported that he no longer exercises, rides a bike, or teaches martial arts, he has performed these activities well after the alleged onset date of July 29, 2008. In fact, the record shows that he continued to teach martial arts at least through October 2012 and he was spending his time relearning computer graphics software.   Overall, the ability to perform this wide range of activities of daily living is inconsistent with a complete inability to work in any capacity at SGA levels on a sustained basis.

Moreover, a review of the claimant's work history for the 15 years prior to his alleged onset date shows that, for the most part, his earnings are well below the level of substantial gainful activity.   While not dispositive, such a work history weighs negatively on a claimant's overall credibility as it suggests that he may have reasons for seeking disability benefits other than a legitimate inability to work.   In addition, the claimant has worked at the level of substantial gainful activity after the alleged onset date, despite his back pain complaints, and he has received unemployment compensation benefits after 2008.   In applying and accepting unemployment benefits, an individual must indicate that he is ready and able to work.   The undersigned finds that the claimant's application for and receipt of unemployment benefits to be inconsistent with allegations of disability.

For all of the above reasons, the undersigned finds that the claimant's statements are not fully credible to the extent he claims disability.   The undersigned acknowledges, however, that the claimant has some legitimate functional

difficulties since his amended alleged onset date and accounts for any credible limitations by restricting him to light work with the postural and manipulative limitations delineated in the residual functional capacity above.   The undersigned finds that the assessed residual functional capacity adequately takes into account the claimant's credible symptoms and limitations.

As for the opinion evidence, the record does not contain any opinions from treating physicians indicating the claimant is disabled or has limitations greater than those determined in this decision since October 22, 2008.

R. 20-21.

In concluding her RFC assessment, the ALJ considered the State agency

determination as affirmed by the State agency physician.   R. 21.

The State agency determination concluded that the claimant could perform light exertional work with no additional restrictions and the State agency physician affirmed (Exhibits 3F, 5F) [R. 337-44, 477].   While this is largely consistent with the objective physical findings of record and supported by the record as a whole, the undersigned has assessed additional postural and manipulative restrictions to account for any credible symptoms of pain, as outlined above.   For the above stated reasons, the undersigned gives some weight to this opinion.

R. 21.

## V.   Legal Analysis

### A.   Substantial evidence supports the ALJ's determination of Plaintiff's credibility and that Plaintiff is not disabled.

Plaintiff argues the ALJ erred when she found, in part, that Plaintiff's ability to

perform a wide range of activities of daily living was inconsistent with a complete inability

to work in any capacity at SGA levels on a sustained basis.   Doc. 13 at 8-11.   Plaintiff

also argues that the ALJ erred when weighing the evidence regarding Plaintiff's activities

of daily living.   Doc. 13 at 13.

The ALJ determined that Plaintiff engaged in SGA through October 21, 2008.   R.

16.   The ALJ also determined, however, that beginning October 22, 2008, there is a

continuous 12-month period during which Plaintiff did not engage in SGA.   *Id.*

The ALJ considered some of the treatment notes of Dr. Newcomer from September and October 2008 reflecting Plaintiff's complaints of worsening low back pain and Dr. Newcomer's findings of tenderness and Plaintiff's limited range of motion of the lumbar spine.   R. 18, 480-81, 484-85.   (Dr. Wilson also examined Plaintiff during this timeframe.   R. 478-79, 482-83.)   The ALJ gave Dr. Newcomer's opinion regarding resulting work-related limitations limited weight because Plaintiff was still performing full-time light duty work activity above the level of SGA at that time with no difficulty.   R. 16, 18, 229, 255, 259; *see supra* at n. 7.

The ALJ considered treatment notes from the VA from approximately August 2009 to approximately October 2012, which generally showed that despite on-going complaints of low back pain, Plaintiff had normal physical findings and responded well to pain management, was able to move all extremities equally, and had no weakness or loss of sensation, and was asked to continue home exercises.   R. 19, 350-475.   Plaintiff reported in June 2010 that his exercise regimen consisted of riding a bike, walking, and teaching martial arts and that he had no pain with exercise.   He walked unassisted; he was alert and oriented; had normal strength and sensation; negative straight leg raising; and Plaintiff could heel and toe walk, notwithstanding complaints of lumbar pain with radiation into his left hip.   R. 19, 420, 423.   An MRI of the lumbar spine in March 2011 showed moderate degenerative disc changes at L4-L5 and L5-S1 and a small central disc protrusion at L4-L5 and there was no significant disc herniation or nerve root impingement.   R. 19, 476.

Other treatment notes from the VA showed that despite complaints of right wrist pain, an EMG study showed only mild right carpal tunnel syndrome.   Physical findings showed overall full strength and Plaintiff reported in October 2012 that he performed 30 to 60 minutes of martial arts daily despite low back pain.   Pain medications were effective, and he was losing weight, relearning computer graphics software, and teaching martial arts.   It was noted that weight loss would likely improve low back pain significantly.   R. 19-20, 526-538.   The ALJ concluded that the medical evidence did not fully support Plaintiff's allegations of disabling pain and limitations.

R. 20.

The ALJ considered that Plaintiff's treatment history for low back pain and carpal tunnel syndrome had been conservative, consisting primarily of Ibuprofen and Cyclobenzaprine and that Plaintiff had not required narcotic pain medication.   R. 20. Plaintiff had not been prescribed the use of a cane or other assisted device for walking, despite complaints of low back pain.   *See* R. 18, 51; *see also* R. 346.   Additionally, his treatment consisted of exercise, diet, and walking to improve symptoms of low back pain and Plaintiff lost weight.   R. 20.   Plaintiff did not require additional surgical intervention, physical therapy, or injections, and the lack of objective medical findings and the good response to conservative treatment indicated that Plaintiff's symptoms were not as limited as he alleged.   *Id.*   As to carpal tunnel syndrome, treatment consisted of a wrist brace, which Plaintiff used only minimally, and while he testified that he was scheduled for carpal tunnel surgery in and around January 2013, R.41-42, the record did not show that the surgery was performed.   R. 20; *see* 64-69.   Regardless, the ALJ accounted for Plaintiff's

alleged carpal tunnel limitations in the RFC "by limiting him to no more than a frequent ability to finger and handle objects with his right upper extremity."   R. 20.

Plaintiff's conservative treatment also provides substantial evidence to support the ALJ's credibility determination and assessment of Plaintiff's RFC.   20 C.F.R. § 404.1529(c)(3)(iv)-(v); Social Security Ruling (SSR) 96-7p; Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996).   Plaintiff's treatment history indicates his medication has generally controlled his alleged pain and this detracts from his assertion that he his disabled.   R. 20; 20 C.F.R. § 404.1529(c)(3)(iv); SSR 96-7p; Hartwell v. Heckler, 735 F.2d 1292, 1293 (11th Cir. 1984).

In assessing Plaintiff's credibility, the ALJ considered factors such as Plaintiff's activities of daily living, including that he was able to care for his personal hygiene, prepare meals, perform household chores, and care for his mother, and that he was able to exercise, walk, ride a bike, and teach martial arts.[10]   R. 18, 20, 54-47, 420, 423.   The ALJ concluded that Plaintiff's daily activities, as he described them, were not as limiting as one would expect given the complaints of disabling symptoms and limitations.   R. 20. The ALJ noted, however, that Plaintiff reported he no longer exercises, rides a bike, or teaches martial arts.   The ALJ considered, however, that he had performed these

---

[10]   In evaluating Plaintiff's credibility, the ALJ may consider a claimant's daily activities when assessing the credibility of her complaints.   Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i) (providing that daily activities are relevant and can be considered by the ALJ when evaluating a claimant's symptoms); *but see* Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997) ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).   A claimant's ability to do some work, even at a low level, "may indicate that she is able to do more work."   Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 808 (11th Cir. 2013) (unpublished).

activities after the amended alleged onset date of July 29, 2008, until at least October 2012, *see, e.g.*, R. 534.   R. 20.

As noted by Plaintiff, the ALJ found that the ability to perform such a wide range of activities of daily living was "inconsistent with a complete inability to work in any capacity at SGA levels on sustained basis."   R. 20.   Plaintiff argues that in making this statement, the ALJ erred having applied "the wrong legal standard" because Plaintiff was not required to demonstrate a complete inability to work at SGA levels on a sustained basis. Doc. 13 at 8-9.

Throughout her decision, the ALJ properly defined disability, followed the sequential evaluation process, and applied the correct legal standards in assessing Plaintiff's credibility and determining that Plaintiff did not meet his burden to show that he is disabled.   R. 14, 17-21.   The ALJ properly determined, based on this record that Plaintiff's activities of daily living are not consistent with his allegations of disabling limitation and therefore they undermine his credibility.   R. 20.   The ALJ found Plaintiff's statements were not entirely credible because the medical record did not corroborate his amended alleged onset date and much of his testimony, and she continued to work after allegedly becoming disabled.   R. 18, 21; *see* 20 C.F.R. § 404.1529(c)(4) (allowing ALJ to consider inconsistencies when determining credibility); 20 C.F.R. § 404.1571; Douglas v. Comm'r of Soc. Sec., 486 F. App'x 72, 75 (11th Cir. 2012 (unpublished).

The ALJ noted that Plaintiff had received unemployment benefits after 2008, which was after his amended alleged onset date.   R. 18, 21, 33.   Accepting unemployment

benefits required Plaintiff to certify that he was ready, willing, and able to work.   R. 21,
33; Thyben v. Astrue, No. 8:11-CV-2811-T-30TGW, 2012 WL 5878671, at *8 n.5 (M.D.
Fla. Oct. 29, 2012), *adopted,* 2012 WL 5878098 (M.D. Fla. Nov. 20, 2012).   Plaintiff had
also looked for work after 2008.   R. 39.   His receipt of unemployment benefits and the
fact that he continued to look for work after the amended alleged onset date also
undermine the credibility of his allegations of disabling limitations.   20 C.F.R. §
404.1529(c)(3)(i), (c)(3)(vii); SSR 96-7p; Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir.
1995).

The ALJ did not find Plaintiff without any pain or limitation and noted that Plaintiff
had some legitimate functional difficulties.   The ALJ accounted for his credible limitations
by restricting him to light work with the postural and manipulative limitations she included
in the RFC assessment.   R. 17, 21.   Plaintiff did not meet his burden of providing
sufficient evidence to support his allegations of disabling pain and other symptoms.
Moore, 405 F.3d at 1208; Ellison, 355 F.3d at 1276.   Substantial evidence supports
ALJ's credibility findings because the medical record, including treating physician reports
and diagnostic testing, do not support his claims of disability.

## B.   Substantial evidence supports the ALJ's finding that Plaintiff could perform other work

Plaintiff argues the ALJ erred in concluding that Plaintiff was capable of performing
light work because he is not capable of standing and walking six hours a day, five days a
week, because he had chronic low back pain, was obese, and took several Ibuprofen at
home without much relief according to a cited medical record from the VA of February 23,

2011.[11]   Doc. 14 at 13-16.

Social Security Ruling (SSR) 02-1p, 2002 SSR LEXIS 1 (Sept. 12, 2002), guides

the evaluation of obesity in disability claims, and was published following the deletion of

Listing 9.09, Obesity, from the Listing of Impairments.   2002 SSR LEXIS 1, at *1-2.

Social Security Ruling 02-1p recognizes that obesity is a risk factor that increases the

chance of developing impairments in other body systems, including the cardiovascular,

respiratory, and musculoskeletal body systems.   *Id.* at *6.   Social Security Ruling 02-1p

also provides guidance when evaluating obesity is assessing an RFC.   *Id.* at *16-19.   It

is noted, in part, that

> [o]besity can cause limitation of function.   The functions likely to be limited depend
> on many factors, including where the excess weight is carried.   An individual may
> have limitations in any of the exertional functions such as sitting, standing, walking,
> lifting, carrying, pushing, and pulling.   It may also affect the ability to do postural
> functions, such as climbing, balance, stooping, and crouching.   The ability to
> manipulate may be affected by the presence of adipose (fatty) tissue in the hands
> and fingers.   The ability to tolerate extreme heat, humidity, or hazards may also
> be affected. . . .
>
> An assessment should also be made of the effect obesity has upon the individual's
> ability to perform routine movement and necessary physical activity within the work
> environment.   Individuals with obesity may have problems with the ability to
> sustain a function over time.   As explained in SSR 96-8p ("Titles II and XVI:
> Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments
> must consider an individual's maximum remaining ability to do sustained work
> activities in an ordinary work setting on a regular and continuing basis.   A "regular
> and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent
> work schedule.   In cases involving obesity, fatigue may affect the individual's

---

[11]   At step two, the ALJ determined that Plaintiff had several severe impairments.
R. 17.   The ALJ expressly noted that "obesity was considered in the [RFC] assessment
below."   *Id.*   Plaintiff does not argue that the ALJ erred in not finding Plaintiff's obesity to
be a severe impairment.   As a result, any such contention to the contrary is waived.
<u>Sanchez v. Comm'r of Soc. Sec.</u>, 507 F. App'x 855, 856 n.1 (11th Cir. 2013)
(unpublished).

physical and mental ability to sustain work activity.   This may be particularly true in cases involving sleep apnea.

The combined effects of obesity with other impairments may be greater than might be expected without obesity.   For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

*Id.* at *16-17.

The ALJ acknowledged that Plaintiff "has some legitimate functional difficulties since his amended alleged onset date" and she "account[ed] for any credible limitations by restricting him to light work with the postural and manipulative limitations" she assessed.   R. 17, 20-21.   The ALJ noted that treatment notes from the VA indicating obesity, but that Plaintiff was losing weight and advised to continue to follow a low-fat diet, exercise, and lose additional weight to improve low back pain.   R. 19, 534-68.   The ALJ found that Plaintiff's musculoskeletal impairment and obesity did not limit Plaintiff as much as he alleged, because the treatment history, objective medical findings, activities of daily living, work history, and receipt of unemployment benefits to not substantiate his allegations of disabling limitations.   R. 20.   Plaintiff's obesity did not exacerbate his back pain to the extent that he experienced disabling symptoms.

R. 20-21.   The ALJ accounted for Plaintiff's credible limitations caused by his musculoskeletal impairment and obesity in the RFC assessment.   R. 17, 21; *see* Solomon v. Comm'r of Soc. Sec., 532 F. App'x 837, 840-41 (11th Cir. 2013 (unpublished).

Plaintiff requests this Court to re-weigh the evidence and substitute its discretion for that of the ALJ.   Bloodsworth, 703 F.2d at 1239.   As stated above, the role of a reviewing court under 42 U.S.C. § 405(g) is limited to determining whether there is

substantial evidence in the record as a whole to support the decision.   As long as the ALJ's decision is supported by substantial evidence and based upon correct application of the law, as it is in this case, it is entitled to deference and should be upheld.

## V.   Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law.   Accordingly, pursuant to 42 U.S.C § 405(g), it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's applications for Social Security benefits should be **AFFIRMED.**

**IN CHAMBERS** at Tallahassee, Florida, on January 5, 2015.

<u>s/   Charles A. Stampelos</u>
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**